IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

PROSPECT ENERGY CORPORATION,  §
                              §
              Plaintiff,      §
                              §
VS.                           §   CIVIL ACTION H-10-1396
                              §
DALLAS GAS PARTNERS, LP, DALLAS §
GAS GP, LLC, DAVID NELSON,    §
JEFFREY WEISS, AND TOM MUSE,  §
                              §
              Defendants.     §

**OPINION AND ORDER**

Pending before the Court in the above referenced action between the recently re-aligned parties are (1) a motion for partial summary judgment under Fed. R. Civ. P. 56 (instrument #176) filed by now-Plaintiff Prospect Energy Corporation ("Prospect") against now-Defendant Dallas Gas Partners, LP ("DGP") and Third-Party Defendants Dallas Gas GP, LLC (DGP's current general partner), David W. Nelson, Jeffrey Weiss, and Thomas P. Muse on (a) Prospect's counter claims for breach of the Release and Covenant Not to Sue[1] contained in the LLC Membership Interest Purchase Agreement ("the LLC Purchase Agreement"), signed by Nelson, Weiss, and Muse, (b) as well as on Prospect's attorney's fee and

_____

[1] Prospect asserts that Defendants intentionally violated the Release and Covenant Not to Sue contained within Section 9 of the LLC Membership Interest Purchase Agreement (copy attached to #176 as Ex. B) by filing and pursuing a lawsuit against Prospect on the claims that were released.

-1-

litigation expense damage claims against these parties[2]; and (2) a motion for summary judgment (#187) filed on behalf of the individual Defendants--David W. Nelson, Jeffrey Weiss, and Thomas P. Muse.

## I.   Standard of Review

### A.   Summary Judgment

Summary judgment is proper when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The movant has the burden to demonstrate that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 317, 323 (1986). The substantive law governing the claims identifies the essential elements and thus indicates which facts are material. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 317, 325 (1986).

Where the non-movant bears the burden of proof at trial, the movant need only point to the absence of evidence to support an essential element of the non-movant's case; the movant does not have to support its motion with evidence negating the non-movant's

---

[2] Still pending, but not included in Prospect's motion for partial summary judgment, are its other claims for fraud, statutory fraud, negligent misrepresentation, conspiracy, fraudulent transfer, and unjust enrichment.
   The individual Defendants' cross motion for summary judgment does address these causes of action.

case.  *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

If the movant meets its burden, the non-movant must then come forward with evidence such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 248.  The non-movant "must come forward with 'specific facts showing there is a genuine issue for trial.'" *Matsushita Elec. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  "A factual dispute is deemed 'genuine' if a reasonable juror could return a verdict for the nonmovant, and a fact is considered 'material' if it might affect the outcome of the litigation under the governing substantive law." *Cross v. Cummins Engine Co.*, 993 F.2d 112, 114 (5th Cir. 1993).  Summary judgment is proper if the non-movant "fails to make a showing sufficient to establish the existence of an element essential to that party's case." *Celotex Corp.*, 477 U.S. at 322-23; *Piazza's Seafood World, LLC v. Odom*, 448 F.3d 744, 752 (5th Cir. 2006).  Although the court draws all reasonable inferences in favor of the non-movant, the non-movant "cannot defeat summary judgment with conclusory, unsubstantiated assertions, or 'only a scintilla of evidence.'" *Turner v. Baylor Richardson Med. Center*, 476 F.3d 337, 343 (5th Cir. 2007). Conjecture, conclusory allegations, unsubstantiated assertions and speculation are not adequate to satisfy the nonmovant's burden. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1079 (5th Cir. 1994);

*Ramsey v. Henderson*, 286 F.3d 264, 269 (5th Cir. 2002).  Nor are pleadings competent summary judgment evidence.  *Little,* 37 F.3d at 1075; *Wallace v. Texas Tech. U.*, 80 F.3d 1042, 1045 (5th Cir. 1996).

"'On cross-motions for summary judgment, [the court] review[s] each party's motion independently, viewing the evidence and inferences in the light most favorable to the nonmoving party.'" *Amerisure Ins. Co. v. Navigators Ins. Co.*, 611 F.3d 299, 304 (5th Cir. 2010), *quoting Ford Motor Co. v. Tex. Dep't of Transp.*, 264 F.3d 493, 498 (5th Cir. 2001).

A district court may not make credibility determinations or weigh evidence when deciding a summary judgment motion.  *Chevron Phillips*, 570 F.3d 606, 612 n.3 (5th Cir. 2009), *citing EEOC v. R.J. Gallagher Co.*, 181 F.3d 645, 652 (5th Cir. 1999).

**B.  Law of the Case Doctrine**

Under the law of the case doctrine, "an issue of law or fact decided on appeal may not be reexamined either by the district court on remand or by the appellate court on a subsequent appeal." *Fuhrman v. Dretke*, 442 F.3d 893, 896 (5th Cir. 2006)(citations omitted), *cited for that proposition in Gene & Gene, LLC v. BioPay, LLC*, 642 F.3d 698, 702 (5th Cir. 2010).  The only exceptions to review of issues decided on appeal are "(i) the evidence on a subsequent trial was substantially different, (ii) controlling authority has since made a contrary decision of the law applicable to such issues, or (iii) the decision was clearly erroneous and

-4-

would work a manifest injustice." *Id.* at 897, *cited by id.*  After carefully reviewing the record, the Court finds that none of the exceptions to the doctrine applies here.  The doctrine rests "'upon sound policy that when an issue is once litigated and decided, that should be the end of the matter.'"  *Gene & Gene*, 642 F.3d at 702, *quoting United States v. U.S. Smelting Refining & Mining Co.*, 339 U.S. 186, 198 (1950).   The bar "covers issues decided both expressly and by necessary implication." *United States v. Pineiro*, 470 F.3d 200, 205 (5th Cir. 2006).

When a district judge has issued an order or judgment and the case is subsequently transferred to the docket of another judge, the general rule is that

> the successor judge should not overrule the earlier order or judgment. . . . This rule of thumb is by no means absolute.  It is heavily accented by the principle of comity.  As such, it should give way, if the need should arise, to the interests of justice and economy when those interests conflict with rigid adherence to the rule.  The successor judge has the same discretion as the first judge [under Federal Rule of Civil Procedure 54] to reconsider the order. [citations omitted]

*Abshire v. Seacoast Products, Inc.*, 668 F.2d 832, 837-38 (5th Cir. 1982).  *See also In re: Ford Motor Co.*, 591 F.3d 406 (5th Cir. 2009)("We have also used the law of the case doctrine when examining a situation 'in which one judge has rendered an order or judgment and the case is then transferred to another judge.'"), *citing States v. O'Keefe*, 128 F.3d 885, 892 (5th Cir. 1997), and *Abshire*, 668 F.2d at 838.  For a detailed discussion, *see generally*

Charles Alan Wright, Arthur R. Miller, and Edward H. Cooper, 18B
*Fed. Prac. & Proc.* § 4478.1 (2d ed. updated through 2010).

## C, Collateral Estoppel

Similarly collateral estoppel, also known as "issue
preclusion," blocks "the relitigation of 'issues actually
adjudicated and essential to the judgment' in a prior litigation
between the same parties." *Kaspar Wire Works, Inc. v. Leco Eng'g
& Mach., Inc.*, 575 F.2d 530, 535-36 (5th Cir. 1978); *Seiferth v.
Camus*,377 Fed. Appx. 417, 421 (5th Cir. May 10, 2010).  The Fifth
Circuit in *Green v. C.I.R.*, 322 Fed. Appx. 412, 417-18 (5th Cir.
Apr. 23, 2009), *quoting United States v. Shanbaum*, 10 F.3d 305, 311
(5th Cir. 1994), opined,

> Issue preclusion, or collateral estoppel . . . promotes
> the interests of judicial economy by treating specific
> issues of fact or law that are validly and necessarily
> determined between two parties as final and conclusive.
> Issue preclusion is appropriate only if the following
> four conditions are met.  First, the issue under
> consideration in a subsequent action must be identical to
> the issue litigated in the prior action.  Second, the
> issue must have been fully and vigorously litigated in
> the prior action.  Third, the issue must have been
> necessary to support the judgment in the prior case.
> Fourth, there must be no special circumstance that would
> render preclusion inappropriate or unfair.  If these
> conditions are satisfied, issue preclusion prohibits a
> party from seeking another determination of the litigated
> issue in the subsequent action.

## II.  Procedural and Substantive Background

In mid 2004, DGP[3] attempted to buy Gas Solutions, Ltd. ("Gas Solutions"), a natural gas processing plant in Longview, Texas, for $32 million.  On July 29, 2004 DGP signed a Purchase and Sale Agreement with Gas Solutions agreeing to pay a non-refundable deposit of $500,000 by September 3rd and finalize the purchase by paying the remaining amount by September 23rd.

Because DGP did not have sufficient funds to finance the purchase, on September 3, 2004 DGP signed a non-binding letter of intent with Prospect, a publicly held Maryland business development corporation, pursuant to which Prospect agreed to lend DGP over 94% of that purchase price, subject to due diligence.  Eighteen days later, just two days before DGP was required to close the deal, Prospect informed DGP that the due diligence had convinced Prospect not to lend the money.  Negotiations between the two entities soured, and DGP's partners threatened to sue Prospect.  Ultimately they resolved the dispute.  Instead of lending DGP the requested sum, Prospect paid DGP $3.295 million to reimburse DGP's expenses and to give its partners a profit of $2.5 million, in return for

---

[3] MNW Partners, LLC, a partnership comprised of the three individual Defendants, Muse, Nelson, and Weiss, was actually the entity that entered into the letter of intent to buy Gas Solutions. DGP was created on July 20, 2004 under the name, MNW Acquisition, LLP, with MNW Partners LLC as its general partner, and was also briefly called Gas Solutions Partnership II, LLP.  For convenience Magistrate Judge Froeschner referred to all the entities as "DGP," as did the Galveston District Court when it adopted his reports and recommendations.  #52 at 1.

Prospect's obtaining DGP's contract to buy Gas Solutions for itself and a Release and Covenant Not to Sue from DGP, Muse, Nelson, and Weiss regarding all claims relating to the letter of intent. Section 9 of the LLC Purchase Agreement (#176, Ex. B) memorializing this transaction required all signatories, including any parties consenting to the agreement, "not to institute, maintain or prosecute any action, claim, suit, proceeding or cause of action of any kind to enforce" any of the released Claims. Muse, Nelson, and Weiss, as "sellers" of their respective membership interests in DGP, individually signed the LLC Purchase Agreement; in addition there was a separate consent (#176, Ex. A) signed by each of DGP's five limited partners (Muse, Nelson, Weiss, Franklin Brinegar and James Langdon) expressly approving the transaction and agreeing to and ratifying the Release and Covenant Not to Sue.

Nevertheless, in November 2004, Muse, Nelson, and Weiss on behalf of DGP filed the first of two lawsuits against Prospect, claiming fraud, breach of fiduciary duty, and tortious interference and seeking damages of over $100 million, in the Galveston Division of the Southern District of Texas. Prospect counterclaimed, alleging that DGP had released its claims and breached the Covenant Not to Sue and thereby injured Prospect. Prospect subsequently added claims against DGP's general partner (Dallas Gas GP, LLC) and against Muse, Nelson and Weiss, the "management team" of DGP who purportedly engineered, funded, and in bad faith pursued claims

against Prospect which they knew they had released.[4]

On August 9, 2005, Prospect filed a motion for summary judgment arguing that the Release and Covenant Not to Sue barred all of DGP's claims. In an Amended Report and Recommendation (#52), Magistrate Judge John Froeschner recommended that it be granted. On February 16, 2006 the Galveston District Court adopted that Report and Recommendation and granted the motion; it also denied DGP's request for leave to amend to assert the same claims against Prospect's affiliate, Prospect Capital Management LLC, and Prospect's employees John F. Barry, John Hopley, M. Grier Eliasek, and Eric Klaussmann because the proposed complaint "did not allege any activity that would not be covered by the [Release] and each proposed defendant is covered by that agreement" (#52). #55.

On March 16, 2006 the Galveston District Court denied DGP's motion for leave to file an interlocutory appeal of the denial of leave to amend. #68. Nevertheless DGP filed an appeal (#58), which the Fifth Circuit later dismissed for lack of appellate jurisdiction on September 27, 2006 (#101).

Meanwhile on June 26, 2006 Prospect filed its Second Amended Counterclaim and Third Party Complaint (#83) against DGP's current and former General Partners (Dallas Gas GP, LLC and David W.

_____

[4] Muse, Nelson, and Weiss were the managing members and sole owners of DGP's original general partner, Dallas Gas GP, LLC, and the principal equity owners of DGP.

Nelson) and against Nelson, Muse, and Weiss[5] for breach of contract (the Release and Covenant Not to Sue), fraud, statutory fraud, negligent misrepresentation, conspiracy, fraudulent transfer, unjust enrichment, and attorneys' fees.

On July 7, 2006 Prospect moved for partial summary judgment on its counterclaim for breach of Release and Covenant Not to Sue (#86). DGP filed a cross motion for summary judgment, arguing that it had no liability (#93). Magistrate Judge Froeschner's subsequent Report and Recommendation on March 28, 2007 found that DGP "clearly violated the Release when it filed its suit," and recommended that Prospect should receive actual damages, including attorney's fees and costs. #104. On May 16, 2007 the Galveston District Court adopted the Report and Recommendation and granted Prospect's motion for partial summary judgment on its counterclaim for breach of Release and Covenant Not to Sue, calling DGP's objections "wholly without merit," and it denied DGP's cross motion. #110.

Meanwhile on September 21, 2006, DGP's partners Muse, Nelson, and Weiss directed that a second lawsuit be filed on behalf of DGP in the Eastern District of Texas, Marshall Division, asserting the same claims regarding which this Court had denied DGP's motion for leave to amend and to add to this suit. The second action was

---

[5] According to Prospect's pleadings, Muse, Nelson, and Weiss purportedly directed, funded and in bad faith pursued the claims which they knew they had released.

subsequently transferred to Galveston as a "duplicative" suit and consolidated with the instant action (#109).

Based on the earlier rulings in this first action that the Release and Covenant Not to Sue barred all claims against Prospect I as a matter of law, on May 4, 2007 the second action's Prospect Defendants moved for summary judgment (#111) on the second action's claims against DGP.  Another Memorandum and Recommendation was issued by Magistrate Judge Froeschner (#115), recommending that summary judgment be granted for all the reasons he had set out in his earlier Memorandum and Recommendation (#52), which he incorporated by reference.

On October 26, 2007 this case was reassigned to the undersigned judge.  #118.  Judge Froeschner's Memorandum and Recommendation (#115) was adopted on January 4, 2008 by this Court (#121), which granted summary judgment to the Prospect Defendants on the grounds that the issues had previously been decided and no substantial new evidence nor arguments had been presented since that ruling.

On August 20, 2008, this Court entered a Final Judgment under Rule 54(b)(allowing court to direct entry of final judgment as to some claims or parties if it determines that there is no just reason for delay), ruling that the Prospect Defendants prevail on all of DGP's claims against them and that DGP take nothing and bear all costs of court; thus the earlier summary judgment orders of

-11-

February 16, 2006 and January 4, 2008 became final and appealable. #150. This Court also stayed Prospect's remaining counterclaim and third-party claims until the appeal of that Final Judgment was resolved. #149.

The Fifth Circuit Court of Appeals affirmed *per curiam.* #169, 170 ("The judgment is legally sound, and it is fair. Dallas Gas erred in not reading the addendum that effected the release, and Dallas Gas ratified the release by keeping the sums received under the contract.").

Subsequently this Court lifted the stay, reinstated the unresolved counterclaims and third-party claims of Prospect, and realigned the parties on April 27, 2010 (#182).

### III.  Pending Motions

### A.  **Prospect's Motion For Partial Summary Judgment (#176)**

Not only does Prospect move for partial summary judgment for breach of Release and Covenant Not to Sue against DGP, but Prospect now seeks to extend liability to DGP's current general partner, Dallas Gas Partners GP, LLC, and to individual Third-Party Defendants Nelson, Weiss, and Muse, who, Prospect alleges, controlled and directed DGP, individually signed the LLC Purchase Agreement containing the Covenant Not to Sue, ratified it by retaining the $3.295 million paid as consideration by Prospect for the contract to purchase Gas Solutions, and deliberately disregarded the Covenant Not to Sue by filing two separate,

meritless lawsuits in two different jurisdictions (here and the Eastern District of Texas, now consolidated), also filed an improper appeal of an interlocutory summary judgment in favor of Prospect on all DGP's claims and of the denial of DGP's motion for leave to file an amended complaint (#58, 68, 101), and finally, the second appeal to the Fifth Circuit, which resulted in an affirmance of this Court's dismissal of DGP's claims.   In addition Prospect seeks a partial summary judgment on the recovery of its attorneys' fees and litigation damage claims against these Defendants. Prospect asserts that the underlying facts have either been determined in earlier rulings by the Court, since affirmed on appeal, or they are undisputed.

Specifically Prospect maintains that it is undisputed that Nelson, Muse, and Weiss, who together owned most of the equity interest in DGP, insisted on prosecuting DGP's meritless claims; these three individuals constituted DGP's "management team," distributed virtually all of DGP's assets to its partners, personally retained millions of dollars paid by Prospect under the LLC Purchase Agreement in exchange for the Release and Covenant Not to Sue, chose their counsel, were responsible for the filing of the two improper lawsuits and appeals against Prospect in violation of the LLC Purchase Agreement, and approved and financed all of this litigation.   Moreover and significantly they each signed the Release and Covenant Not to Sue and were individually bound by it.

-13-

Therefore, Prospect contends, as a matter of law they are each liable individually to Prospect for their own breach of the Release and Covenant Not to Sue.

Prospect examines the roles of Muse, Nelson, and Weiss throughout the purchase of Gas Solutions, to explain in detail Magistrate Judge Froeschner's observation that DGP and Prospect "agreed to a rather complex reorganization of [DGP's] structure to effectuate the sale" of Gas Solutions. *Citing* #52 at 3. Prospect asserts that Muse, Nelson, and Weiss orchestrated and initiated the transactions that gave rise to this litigation. The first initials of the three individual Defendants' last names, **M**use, **N**elson, and **W**eiss, were employed to create the name of the general partnership they formed, MNW Partners, the entity that initially signed the letter of intent to acquire Gas Solutions in mid-2004 for $25.5 million. *See* footnote 3 of this Opinion and Order; Ex. P (Nelson Dep. at 16:10-17:3). Then Muse, Nelson, and Weiss formed MNW Acquisition LP, now known as Dallas Gas Partners, LP ("DGP"), in which the three men together owned a significant majority of the equity interest (Ex. F, Janes Dep. at 108:15-22), in order to execute a formal purchase agreement with Gas Solutions on July 29, 2004 ("Gas Solutions Agreement"). The three men then formed and constituted the only members of MNW Partners, LLC ("MNW LLC") to serve as the general partner of DGP. These three partners in MNW Partners all signed the LLC Purchase Agreement, while DGP's five

-14-

limited partners (Muse, Nelson Weiss, Brinegar and Langdon) also separately signed a Consent and Agreement that (1) DGP should assign its purchase contract to MNW Partners for no consideration; (2) MNW Partners would transfer all of its interest in the contract to Prospect; and (3) MNW Partners would resign as a general partner, to be replaced by Nelson.  #52 at 3.

As evidenced by attached documents, Prospect's motion asserts that throughout this period (from agreeing to the letter of intent with Gas Solutions through the formation of DGP and the execution of the Gas Solutions Agreement) their partnership, DGP, had no operations, only minimal assets, and no funds to buy Gas Solutions; its only significant asset was its contract to buy Gas Solutions. Exs. F (Janes Dep. at 33:8-14; 101: 14-17) and P (Nelson Dep. at 32:25-33:6; 62:4-11).  On September 3, 2004 DGP signed the non-binding letter of intent to borrow from Prospect the sum needed to purchase the Gas Solutions plant.  Under the Gas Solutions Agreement, however, DGP was to pay a non-refundable deposit of $500,000 to Gas Solutions on the same date.  It was also required to close the transaction and pay the balance of $25.5 million by September 24, 2004.

On September 21, 2004, Prospect informed Nelson that due diligence had led Prospect to believe that DGP might not be able to meet a number of the terms and conditions for the loan.  On September 23, 2004 Prospect proposed that it acquire DGP's right to

buy Gas Solutions for an up-front fee of $1,000,000, plus reimbursement of expenses incurred by MNW and of the $500,000 deposit paid by MNW to the principals of Gas Solutions, with the total sum not to exceed $2,000,000.  Ex. H.  On September 23, 2004 Nelson e-mailed Prospect that the proposal was "unacceptable" and threatened litigation if Prospect refused to lend the money. Prospect rejected the counterproposal.  Ex. P.

After conferring with their lawyers and investment bankers, Muse, Nelson, and Weiss counter-proposed as "a final resolution" of their dispute that Prospect that day would pay MNW, now DGP, $2,500,000 in return for its interest in the purchase contract for Gas Solutions, most fees and expenses, and reimbursement of the $500,000 deposited with Gas Solutions.  Exs. I; F; P.  Prospect agreed.  DGP's five limited partners (Muse, Nelson, and Weiss, plus two limited partners with much smaller interests, Franklin Brinegar and James Langdon) signed the "Consent and Agreement of [Limited] Partners of Gas Solutions Partnership II, LP" (#176, Ex. A), consenting on behalf of DGP to the assignment of the Gas Solutions Purchase Agreement and the Release and Covenant Not to Sue to PEC White Oak, LLC, which was wholly owned by Prospect.  Ex. B.  The signatories of the LLC Purchase Agreement included Muse, Nelson, and Weiss individually; Nelson as DGP's then General Partner at the time after he replaced MNW Partners, LLC; and Muse, Nelson and Weiss as members of MNW Partners, LLC, in addition to also being

-16-

limited partners of DGP.  In closing the deal, "DGP's limited
partners signed a written consent that adopted a separate, written
Assignment of Contract that assigned the right to purchase Gas
Solutions to the general partner, MNW Partners." *See* #52 at 3; the
Assignment is Ex. A to the Unanimous Written Consent, attached to
Prospect's Motion for Partial Summary Judgment (#176, Ex. A).  The
written consent also stated that MNW Partners would resign as DGP's
general partner and be replaced by Nelson.  That substitution took
place as contemplated.  Muse, Nelson, and Weiss then sold their
membership interests in MNW Partners, LLC (DGP) to PEC White Oak,
LLC, wholly-owned by Prospect, thereby transferring all of its
assets, including the contract to purchase Gas Solutions, to
Prospect.  PEC White Oak paid $3.295 million to DGP's counsel, Akin
Gump, on September 24, 2004, "for the benefit of David W. Nelson
for the account of the Sellers" (Muse, Nelson, and Weiss).[6]  Akin
Gump distributed the money directly to the partners of DGP,
including Muse, Nelson, and Weiss, in proportion to their
partnership interests.

Section 9 of the LLC Purchase Agreement[7] constituted a
broad mutual release ("Release"), by which the parties released
their claims against one another and agreed never to sue on any of

---

[6] "Sellers" Muse, Nelson, and Weiss were the members of MNW
Partners LLC and three of the five limited partners of DGP.

[7] New York Law governs the construction of the LLC Purchase
Agreement.  #176, Ex. B. at 11.

-17-

the claims released.   #176, Ex. B at § 9(a) and (b).

      As their defense to Prospect's insistence that they were bound by the Release and Covenant Not to Sue, Nelson, who had been a former managing partner at the Austin office of Akin Gump, claimed that he never read the agreement he signed.  Ex. P. (Nelson Dep. #187, Ex. 1 at 255-57).  Weiss testified that he did not read it either (#187, Ex. 2 at 133-34), while Muse stated that he did not read the final document on the day he signed it and did not know about the release until much later because the lawyers "slipped one over on us" (#187 at 84-91).  Brandon Janes, Nelson's former law partner and counsel for DGP in the transaction, testified that the three men did not care whether there was a release, but only wanted the money in exchange for the contract. Ex. F, Janes Dep., #176, Ex. F at 245-246.

      Two months after they executed the LLC Purchase Agreement and pocketed the money paid by Prospect on September 24, 2004, Muse, Nelson, and Weiss authorized DGP to file suit against Prospect. #176, Exs. C (Nelson Dep. at 13:24-14:12) and D (Muse Dep. at 161:5-162:13).  On November 18, 2004, Weiss signed DGP's engagement letter retaining the law firm of Arnold & Itkin to file the suit against Prospect; the same day DGP replaced Nelson as general partner with newly formed Dallas Gas GP, LLC ("DGP LLC").  #176, Exs. J, K, L, and M.  As with DGP after Muse, Nelson, and Weiss had stripped it of its assets, DGP LLC, also managed by Muse, Nelson,

and Weiss, had minimal assets.  Ex. D (Muse Dep. at 17-18).  In sum, argues Prospect, the three individual Defendants were "the management team" that made every decision regarding DGP, including the filing of two meritless lawsuits against Prospect, Prospect Capital Management, and Prospect's officers Barry, Eliasek, Hopley, and Klaussmann, and financed and directed this litigation.  #176, Ex. M (checks to DGP to pay Arnold & Itkin expense deposit of $20,000 under Ex. L; Ex. D (Muse Dep. at 161:25-162:13; Ex. C (Nelson Dep. at 13:24-14:12).

In summary, Prospect insists that Muse, Nelson, and Weiss are liable for breach of the Release and Covenant Not to Sue because (1) each signed the LLC Purchase Agreement, Section 9 of which contained the Release and Covenant Not to Sue, promising not to "institute, maintain or prosecute" any claims against Prospect arising out of the letter of intent[8]; (2) each received valuable and adequate consideration (for a total payment of $3.295 million, for DGP's expenses, including the $500,000 deposit DGP paid to Gas Solutions), in exchange for (a) the assignment of DGP's contract to buy Gas Solutions, (b) agreeing to the Release and Covenant Not to Sue, and (c) Prospect's agreement to pay DGP's investment banking

---

[8] Prospect asserts that it is undisputed that Muse, Nelson, and Weiss each consented to, caused, and funded the filing of the lawsuits here in violation of the Release and Covenant Not to Sue. Ex. M; Ex. D (Muse Dep. at 161:25-162:13; Ex. C (Nelson Dep. at 13:24-14:12).

fees[9]; and (3) under the law of the case , they filed suit in breach of the Release and Covenant Not to Sue (#55, 110, 121) and the doctrine of issue preclusion or collateral estoppel "bars the relitigation of issues actually adjudicated, and essential to the judgment, in a prior litigation between the same parties."[10] Prospect insists that the argument that the three men did not violate the Release and Covenant Not to Sue because the lawsuits were filed in DGP's name

> is a distinction without a difference, as the LLC Purchase Agreement employs extraordinarily broad terms in the Release and Covenant Not to Sue. Specifically, Muse, Nelson, and Weiss released "any and all claims, . . . whether individual, class or derivative in nature," and unequivocally agreed not to "institute, maintain, or prosecute" any of the released claims against Prospect. On its face, the LLC Purchase Agreement unambiguously prohibited the suits initiated here. This Court and the Fifth Circuit have determined that Muse, Nelson, and Weiss surrendered DGP's right to bring such a suit when they signed the LLC Purchase Agreement.

#176 at 24.

Moreover, argues Prospect, the individual Defendants' subsequent conduct, also aiming to circumvent the LLC Purchase Agreement, nevertheless violated it. Nelson, as DGP's general

---

[9] Prospect wired the funds to Akin Gump, which immediately distributed the consideration paid by Prospect to Muse, Nelson, Weiss, Brinegar, and Langdon. Ex. F (Janes Dep. at 230:3-231:3; Ex. P (Nelson Dep. at 287:21-288:1); Amended Report and Recommendation, #52 at 3 ("It is undisputed that the money Prospect paid to Akin Gump was eventually divided by one means or another between the five members of DGP, not just the three partners of MNW Partners.")).

[10] *Kaspar Wire Works, Inc.*, 575 F.2d at 535-36.

partner, worked with Muse and Weiss to sue Prospect.  On November 18, 2004 the three men formed DGP LLC, became its managing partners, and then substituted DGP LLC in place of Nelson as DGP's general partner.  Exs. K, L.  That same day Weiss signed an engagement letter retaining Arnold & Itkin to file this action against Prospect on behalf of DGP.  Prospect asserts that DGP LLC is owned and controlled by its three managing members, Nelson, Muse and Weiss, who, as noted, financed and directed this litigation. Exs. J; M; D (Muse Dep. at 161:25-162:13; and C (Nelson Dep. at 13;24-14:12).[11]  They also caused the duplicative second lawsuit to be filed.  This Court and the Fifth Circuit rejected the individual Defendants' defense that they never read the LLC Purchase Agreement before signing it.  #52 at 5-6; #55; #170 at 2 ("Dallas Gas erred in not reading the addendum that effected the release, and Dallas Gas ratified the release by keeping the sums received under the contract.").  Where a court has previously held that an unambiguous release and covenant not to sue bars the plaintiff's claims, the plaintiff's breach of the release and covenant not to sue may be deemed "obvious" as a matter of law, and the sued party is entitled to damages.  *Lubrizol Corp. v. Exxon Corp.*, 957 F.2d 1302, 1306 (5th

---

[11] This Court notes that Texas permits application of the principles of piercing the corporate veil and alter ego to pierce the liability shield of limited liability companies.  *Phillips v. B.R. Brick and Masonry, Inc.*, 2010 WL 3564820, *6-7 & n.5 (Tex. App.--Houston [1st Dist.] Sept. 10, 2010), *citing Sanchez v. Mulvaney*, 274 S.W.3d 708, 712 (Tex. App.-San Antonio 2008, no pet.).

Cir. 1992)(applying New York law)(holding that where an action is brought in obvious breach of covenant not to sue, court has wide discretion to impose liability for litigation expenses, including attorney's fees). *See also McKissick v. Gemstar-TV Guide Int'l, Inc.*, No. 04-CV-262-JHP-SAJ, 2006 WL 211950, *2 (N.D. Okla. Jan. 27, 2006)(granting summary judgment in favor of defendant where plaintiff's suit was "in violation of a broad and unambiguous covenant not to sue"), *aff'd in part, vacated in part on other grounds, and remanded*, 618 F.3d 1177 (10th Cir. 2010). Prospect insists that the individual Defendants cannot do indirectly what they were prohibited from doing directly. Because Muse, Nelson, and Weiss each signed the Agreement on his own behalf, they are not entitled to the insulation against personal liability that is accorded to limited partners for obligations of a Texas limited partnership or members of a Texas limited liability company. *See* DGP's Response to Prospect's Motion for Summary Judgment (#48 at 20, 23)(admitting, "The signatories to the LLC Agreement included . . . three individuals acting in their individual capacities (Muse, Nelson, and Weiss)."); Ex. C (Nelson Dep. at 92)("When you say did [Akin Gump] represent me individually, it did represent me individually in that when the LLC agreement was prepared, I signed that agreement as an individual."); Ex. E (Weiss Dep. at 134:25-135:19)("Tom, David and I sold our individual membership shares to PEC White Oak Company, and insofar as that's concerned, that's

-22-

what--the document we signed and that's the document that--
obviously, I signed that document, I expected to be bound by that
personally . . . There was a presumption that the document we
signed as individuals, we were going to live by . . . ."). *Carbon
El Norteno L.L.C. v. Sanchez*, No. 13-07-00565-CV, 2008 WL 3971554,
*5 (Tex. App.--Corpus Christi Aug. 28, 2008, no pet.)(affirming
summary judgment in breach of contract case against LLC members
where they signed the agreement in their individual capacities).
Nelson was also the general partner of DGP at the time he signed
the Agreement.   Prospect emphasizes that the Fifth Circuit
expressly stated that DGP and its partners also ratified the
Release and Covenant Not to Sue by keeping the consideration they
were paid.

Thus Prospect insists that the three individual Defendants
breached the Release and Covent Not to Sue as a matter of law.

Because this Court previously concluded that DGP is liable to
Prospect for Breach of the Release and Covenant Not to Sue and
granted Prospect summary judgment against DGP on Prospect's
counterclaim,[12] affirmed on appeal, Prospect now contends that as
DGP's General Partner, DGP LLC is also liable for the breach.  Tex.
Bus. Org. Code § 153.152.  Prospect urges that it was damaged by

---

[12] DGP has few assets because, as discussed, it transferred
most of them for no consideration to its partners, including
Nelson, Muse, and Weiss.  Prospect suggests that DGP LLC probably
also lacks assets to satisfy DGP's obligations.  #176 at 29.

Defendants' lawsuit, which has been found to be meritless as a matter of law, and by their continuing vexatious and improper tactics, including the premature appeal of an interlocutory summary judgment after this Court denied leave to file it, the filing of a second duplicative suit in another federal court despite this Court's ruling that the claims were legally barred by the Release and Covenant Not to Sue, the obstruction of discovery requests, and repetitive motions and reurging of positions previously rejected by this Court. This Court has also ruled that Prospect is entitled to actual damages, including attorneys' fees and costs incurred in defending itself here, now the law of the case. #104 at 3; #110; LLC Purchase Agreement, Ex. B, § 11(F).[13] Under New York law, which governs construction of the LLC Purchase Agreement, "when a contract provides for an award of attorneys' fees, there is no right to a jury trial on the issue of the reasonable value of such fees." *Paramount Communications, Inc. v. Horsehead Industries, Inc.*, 287 A.D.2d 345, 346, 731 N.Y.S.2d 433, 434 (1st Dep't. 2001). "A determination of reasonable counsel fees is a matter within the

---

[13] Citing case law, Magistrate Judge Froeschner concluded that "a release in a contract" and "a successful counterclaim for breach of a contract not to sue entitles the prevailing party to the recovery of attorney's fees incurred in the defense of the offending suit." #104 at 3. Moreover Section 11(F) of the LLC Agreement expressly stated that "actual damages may be recovered" for litigating a claim relating to the agreement, and DGP agrees that fees and costs in this case would constitute actual damages. *Id.* The District Court adopted his Report and Recommendation. #110.

-24-

sound discretion of the trial court and absent abuse, that
determination should not be disturbed." *Bankers Trust Co. v.
Hoovis*, 263 A.D.2d 937, 939, 694 N.Y.S.2d 245, 247 (3d Dep't.
1999). Prospect requests reimbursement of reasonable legal fees
and expenses in the amount of $1,308,109.54, as detailed in the
Affidavit of Neil Kenton Alexander, Ex. N, and the contemporaneous
time and billing records submitted for the Court to review.[14] The
Court must determine the number of hours reasonably expended on the
litigation multiplied by a reasonable hourly rate of comparable
attorneys in the community to obtain the lodestar, which the Court
may then accept or adjust up or down according to the circumstances
of the case.

**1.    DGP, DGP, LLC, Nelson, Weiss, and Muse's (collectively,
"Defendants'") Response (#179)**

Defendants object to Prospect's attempt to extend the
liability of that partnership to the three individual limited
partners of DGP, Nelson, Weiss, and Muse, by glossing over the
basic principles of partnership law or re-defining what it means to
file suit.

In Section 9 of the LLC Membership Interest Purchase Agreement
the released claims included all claims arising out of the letter
of intent and the resulting transaction between DGP and Prospect

---

[14] Prospect also submits the Affidavit of independent expert
Ross Citti on the reasonableness of Prospect's requested legal fees
and expenses. Ex. O.

regarding the purchase of the Gas Solutions, and the releasing parties were broadly defined to consist of not only the signatories, but also any other "parties acknowledging or consenting to this Agreement." Magistrate Judge Froeschner concluded that the Purchase Agreement and the "Consent and Agreement of Limited Partners of Gas Solutions Partnership II, LP" had to be read together, in the context of the negotiations between DGP and Prospect. Defendants maintain that the law of the case in this litigation is that DGP, as the intended beneficiary of the sale of the natural gas plant, was the real party in interest to the dispute here, was bound by the Covenant Not to Sue, and breached it by filing suit against Prospect in November 2004. #52 at 6. The magistrate judge also found that DGP's five limited partners and its general partner consented to the assignment of DGP's interest in Gas Solutions to MNW Partners LLC with the knowledge that the three partners in MNW Partners LLC would in turn sell their interests to PEC White Oak, owned by Prospect. Magistrate Judge Froeschner wrote, "[T]he signature pages to the LLC agreement were intended to bind DGP to the terms stated therein," even though the Agreement did not name Muse, Nelson or Weiss by their roles as partners in DGP. #52 at 9. The magistrate judge found not credible the argument that Muse, Nelson, and Weiss signed the Agreement as individuals because that would mean the other two limited partners (Brinegar and Langdon) gave up their

share of the gas contract for free.   #52 at 5.[15]   The Fifth Circuit summarily affirmed the final judgment "essentially for reasons given by the district court and the magistrate judge."   #170; Parties' appellate briefs are attached to #179 as Exs. B and C.

Defendants charge that not only has Prospect failed to expressly assert a fact-intensive alter ego or veil piercing theory, but Prospect must show that the individual Defendants were bound by the Purchase Agreement and that they breached the Covenant Not to Sue.   Only DGP has been found to have been bound by the release and to have breached the covenant by suing Prospect.

---

[15] This Court finds that Defendants' characterization of the Memorandum and Recommendation is inaccurate.   The magistrate judge was rejecting as meritless DGP's's argument that it was not bound by the LLC Purchase Agreement because (1) MNW partners, not DGP, entered into the contract, (2) DGP was not a third party beneficiary of the contract, (3) DGP was not connected in any way to MNW Partners at the time of the sale, and (4) Prospect fraudulently slipped the release provisions into the agreement. The magistrate judge observed that if DGP's contentions were accurate, Brinegar and Langdon would have given up their interests in the purchase contract for essentially nothing, not to mention any amount they may have contributed toward the $500,000 deposit paid to Gas Solutions.   The magistrate judge found implausible the claim that two of the country's most respected law and investment firms representing DGP were deceived by "prospect's wily manipulation" into agreeing to the release provisions in light of uncontraverted evidence that the night before the signing Prospect's attorneys sent a revised version of the LLC Purchase Agreement to Muse, Nelson, Weiss, four of its Akin Gump attorneys and its investment bankers with Section 9 redlined and in bold, underlined type face, along with a clean draft for comparison with earlier versions and a statement that it "is subject to the review and comments of all parties in all respects."   The magistrate judge further noted that DGP provided no authority for its assertion that a party is defrauded if it signs papers that neither it nor its attorneys bother to read despite the highlighting of the contested sections and an invitation to comment on the proposed new version.

Furthermore, while it is arguable that other persons individually bound by the covenant could include Muse, Nelson, Weiss, Brinegar, Langdon, and MNW Partners LLC, Defendants insist that Prospect cannot show that these same persons breached it; just because one signatory breached a covenant does not mean all other signatories have done so.  Similarly, just because a partnership breaches a covenant does not mean all the partners have, as the partnership is an entity distinct from its partners.

The Agreement does not refer to consenting to, causing or funding a lawsuit, which are what Prospect accuses Muse, Nelson, and Weiss of here.  A court must look to the generally accepted meaning of words in construing a release or a covenant and resort to extrinsic evidence only when the contract is ambiguous.  *Wells v. Shearson Lehman/American Express*, 72 N.Y.2d 11, 19 (N.Y. 1988); *in accord Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 662 (Tex. 2005).  Prospect drafted the Release and Covenant Not to Sue and chose the language used in it; Prospect could have broadened the language to include causing another person to prosecute an action or financing one or playing any role in such a suit, but did not.

As for Prospect's claim for attorneys' fees, Defendants assert that Prospect has not shown that it is entitled to fees.  New York law, which governs the construction of the Agreement, follows the American rule that fees and disbursements are incidents of

-28-

litigation and a prevailing party is not entitled to recover them unless they are authorized by an agreement between the parties or by law. *Sauer v. Xerox Corp.*, 95 F. Supp. 2d 125, 129 (W.D.N.Y. 2000). The rule also applies to covenants not to sue. *Artvale, Inc. v. Rugby Fabrics Corp.*, 363 F.2d 1002, 1008 (2d Cir. 1966), *quoted in Sauer*, 95 F. Supp. 2d at 130. Here, argue Defendants, the Covenant Not to Sue is silent about fees, as is the Agreement as a whole about fees for a prevailing party. Section 11(F) of the Agreement explicitly limits damages to "actual damages." In addition, absent language to the contrary demonstrating that the parties intended to permit recovery of fees and expenses incurred as a result of a breach of a covenant not to sue, New York considers a covenant not to sue as a shield rather than a sword, imposing liability only where suit is brought in obvious breach of the covenant or bad faith. *Artvale*, 363 F.2d at 1008. Even if attorneys' fees are viewed as actual damages, when a party raises a covenant not to sue as an affirmative defense, it does not resolve the fee issue as to third-party defendants. When a covenant not to sue is used offensively in a counterclaim for breach of contract, the counterclaimants' attorneys' fees cannot be considered actual damages, but are incidental costs of litigation. Furthermore, New York does not have a statute authorizing attorneys' fees in breach of contract actions.

**2.  Prospect's Reply (#185)**

Prospect complains that DGP "tortures the words of the previous opinions of this Court to argue that this Court's finding that [DGP] was bound [by the Release and Covenant Not to Sue] implied that Muse, Nelson, and Weiss were not also bound." #185 at 2.  As shown, the three men conceded that they individually signed the Agreement and are bound by it.  The Agreement expressly states that the Release and Covenant Not to Sue is binding on all signatories to it, "including, without limitation, any parties acknowledging or consenting to this Agreement"; Muse, Nelson, and Weiss also signed a "Consent of Limited Partners of DGP to the LLC Purchase Agreement.  This Court's earlier ruling that DGP was bound by this Agreement did not relieve the individual signatories to the Agreement of their same obligations.    This Court agrees with Prospect here.

Moreover it is undisputed that Muse, Nelson, and Weiss "caused and funded" this lawsuit to pursue the "MNW Released Claims," and thus each violated the express, unambiguous terms of the Release and Covenant Not to Sue, i.e., not to "institute, maintain, or prosecute any action, claim, suit, proceeding or cause of action of any kind to enforce any of the MNW Released Claims." Ex. B, § 9(a) to #176.  Prospect has submitted evidence demonstrating that the three individual Defendants authorized every action taken to assert the  MNW Released Claims in both actions consolidated into this

lawsuit.

Prospect further insists that it is entitled to recover as actual damages its attorneys' fees and expenses, incurred in defending the released claims under New York law, because the LLC Agreement expressly authorizes recovery of actual damages, including attorneys' fees in defense of the released claims, pursuant to previous orders of the court, now the law of the case.[16] #104 at 3; #110.  Section 11(F) of the LLC Purchase Agreement (Ex. B to #176) provides,

---

[16] The Court observes that the standard established in *Artvale*, 363 F.2d at 1008, for determining "whether a party who has breached a covenant not to sue is liable for litigation expenses inflicted on his adversary," was cited by the Fifth Circuit in *Lubrizol*, 957 F.2d at 1004 (applying New York law), in affirming the district court's application of it:

> The issue appears to hinge on what the parties intended by their contract. . . . . The question . . . is to be solved not by invoking an abstract rule of law but by seeking to determine what the parties fairly contemplated, or would have had they addressed their minds to the problem.  Certainly it is not beyond the powers of a lawyer to draw a covenant not to sue in such terms as to make clear that any breach will entail liability for damages, including the most certain of all--defendant's litigation expenses.  Yet to distill all this out of the usual formal covenant would be going too far; its primary function is to serve as a shield rather than as a sword, often being employed instead of a release to avoid the common law rule with respect to the effect of a release on joint tort-feasors.  In the absence of contrary evidence, sufficient effect is given the usual covenant not to sue if, in addition to its service as a defense, it is read as imposing liability only for suits brought in obvious breach or otherwise in bad faith . . . .

*Artvale*, 363 F.2d at 1008.

In claim [*sic*] otherwise asserted in litigation under or pertaining to this Agreement, only actual damages may be recovered and consequential, punitive or other similar damages shall not be allowed or recoverable except those amounts payable to third parties for which liability is allocated among the parties by the decision of the Expert or applicable court.

Furthermore, Prospect argues that it is not violating the American rule because it is seeking the fees as damages it incurred because of DGP's obvious breach of the Release and Covenant Not to Sue. *See, e.g., Cefali v. Buffalo Brass Co.*, 748 F. Supp. 1011, 1026 (W.D.N.Y. 1990); *Manti Transp., Inc. v. Associates Commercial Corp.*, No. 00-CV-6807, 2002 WL 369807, *4-5 (E.D.N.Y. Mar. 8, 2002)(authorizing award of attorneys' fees for breach of a covenant not to sue). Even without such express authorization in a covenant not to sue, the court may still award fees where the suit was brought in "obvious breach or otherwise in bad faith." *Cefali*, 748 F. Supp. at 1027; *Lubrizol*, 957 F.2d at 1305-06.

## B. Nelson, Weiss, and Muse's Motion for Summary Judgment (#187)

The individual Defendants move for summary judgment on and dismissal of Prospect's eight claims[17] arising from the Covenant Not

---

[17] The individual Defendants state all eight claims arise from the "same narrow set of facts" and identify them as (1) breach of covenant not to sue; (2) common law-fraud for "approving and pursuing" DGP's lawsuit; (3) statutory fraud for not intending to abide by the Covenant Not to Sue; (4) negligent misrepresentation because they promised not to sue Prospect; (5) conspiracy to "misrepresent their intention" and cause the lawsuit to be filed; (6) fraudulent transfer of DGP's assets; (7) unjust enrichment; and (8) attorney's fees under Tex. Civ. Prac. & Rem. Code § 38.001. #187 at 2-3.

to Sue.  They argue that they did not breach the Covenant Not to Sue because they were not parties to the lawsuit[18]; they did not fraudulently induce Prospect to sign the agreement containing the Covenant Not to Sue because they were not even aware of the covenant when they signed the agreement, which, as discussed, they had maintained they had not read; and they did not negligently misrepresent any existing fact when they signed the agreement.

Because they do not bear the burden of proving any of these claims at trial, the individual Defendants focus on pointing out the absence of evidence and of a genuine issue of material fact on elements of Prospect's claims or explaining why the claims fail as a matter of law.  First the individual Defendants contend that Prospect has not shown that the individual Defendants breached the Covenant Not to Sue.  Because the suit was brought by the partnership, DGP, and summary judgment has been entered against it alone, and because a partnership is an entity distinct from its partners, Prospect cannot obtain a judgment against the partners individually for "indirectly" breaching the covenant.  Second, they argue, there is no evidence of fraudulent intent; indeed according to their own deposition testimonies, the individual Defendants were not aware, when they signed the Agreement, that Prospect had inserted the Release and Covenant Not to Sue.

To prevail on a common-law fraud claim, Prospect must

---

[18] The Court notes that earlier rulings have found otherwise.

demonstrate that the individual Defendants (1) made a material misrepresentation that was false, (2) knew that the statement was false when they made it or asserted it without knowledge of its falsity, and (3) intended that the listener rely upon it. *Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W. 2d 41, 47 (Tex. 1998). "A promise to do an act in the future is an actionable misrepresentation when made with the intent to deceive and no intention of performing the act." *Arete Partners, L.P. v. Gunnerman*, 594 F.3d 390, 394 (5th Cir. 2010),[19] *citing Formosa*

_____

[19] Prospect challenges Defendants' reliance on *Arete* to support their "willful ignorance" defense.  It argues that the case is inapplicable because it stands for the proposition that in a fraud claim based on future promises in a contract, the plaintiff cannot rely on the parties' good faith disagreement over the **interpretation** of the contract(his or her understanding of the terms of the agreement) as the only evidence of fraud.  594 F.3d at 397.  *Arrete* did opine that "slight circumstantial evidence of fraud, when considered with the breach of promise to perform, is sufficient to support a finding of fraudulent intent," but found that the plaintiff did not produce even that.  *Id.* at 394-95, *quoting Spoljaric*, 708 S.W. 2d at 435.

Here the Court has already held that the Release and Covenant Not to Sue barred the lawsuit against Prospect as a matter of law; interpretation was not a fact issue.  Defendants have argued that because they did not know about the Release and Covenant Not to Sue, neither they nor their partnership was bound by it.  "Courts have held a party's denial that he ever made a promise is a factor showing no intent to perform when he made the promise." *Spoljaric*, 708 S.W. 2d at 435.

Prospect responds that in contrast to the absence of even "slight circumstantial evidence of fraud" in *Arete*, there is ample evidence for a jury to find that the individual Defendants knew about their promises to release Prospect and refrain from litigation, but never intended to abide by them:  (1) the day before signing the LLC Purchase Agreement, Defendants threatened legal action against Prospect, but on the advice of their lawyers, proposed the "final resolution" of their dispute instead; (2) although Nelson proposed the "final resolution on behalf of

*Plastics,* 960 S.W. 2d at 48.

For its statutory fraud claim, Prospect must prove that the individual Defendants made a "false promise to do an act, when the promise is . . . made with the intention of not fulfilling it." *Tex. Bus. & Com. Code* § 27.01(a)(2)(B).  Proof of actual intent to defraud is an essential element of every fraud-based claim. Failure to perform a contract, by itself, is not adequate evidence of the promissor's intent not to perform when the promise was made.

---

Defendants, he admitted that it was "absolutely not" his understanding that it would be (#35, Ex. 15, Nelson Dep. at 253); (3) the three individual Defendants professed to be "accomplished businessmen" with a "combined 100 years in the oil and gas industry," and were advised by a "top ten ranked national investment bank," while Nelson was the former managing partner of Akin and Gump's Austin office; (4) Prospect's counsel sent a redlined version of the Agreement, highlighting the Release and Covenant Not to Sue, directly to Muse, Nelson, Weiss, all four of their Akin Gump attorneys, and their two financial advisors the evening before the signing; (5) Akin Gump lawyer Lee Potts forwarded the redlined highlighted Release, a clean copy of the Agreement, and the Consent of Limited Partners that references Article 9 containing the Release and Covenant Not to Sue, with instructions to "sign where indicated," to Muse, Nelson, and Weiss; (6) Potts admitted that the three had the opportunity to read the Agreement and comment on the terms (#39, Ex. 1, Potts Dep. at 269:16-278:12); (7) the Release and Covenant Not to Sue took up two pages ("nearly impossible to miss") of the twelve-page Agreement and Consent, which Muse, Nelson and Weiss signed six different times; (8) Muse testified that he felt "raped" by Prospect, which had acted in a way "that would make Meyer Lansky proud" (#188, Ex. 1, Muse Dep. at 69, 75; (9) Weiss stated that he was "bitter" and "angry" when Prospect refused to fund the loan to DGP and refused to shake hands with Prospect's CEO at the closing (#188, Ex. 2, Weiss Dep. at 138-39); and (10) within a week or two of the closing the individual Defendants were actively consulting counsel and discussing plans for suing it (#188, Weiss Dep., Ex. 2 at 151; #35, Ex. 15, Nelson 7/7/2005 Dep. at 255-60) and filed their lawsuit a mere two months after executing what was intended to be the final resolution of their dispute.

*W&F Transp., Inc. v. Wilhelm*, 208 S.W. 3d 32, 48 (Tex. App.-
-Houston [14th Dist.] 2006, no pet.), *citing Spoljaric v. Percival
Tours, Inc.*, 708 S.W. 2d 432, 435 (Tex. 1986).   Supported by
portions of the deposition testimony of Muse, Nelson, and Weiss,
DGP has argued that Prospect sneaked the Release and Covenant Not
to Sue into the agreement at the last minute, that the individual
Defendants did not read the agreement before signing it and were
therefore not aware of the Release and the Covenant Not to Sue, and
that the individual Defendants did not intend to sue Prospect at
the time they signed the agreement.    #187, Ex. 1 at 242-44 and
253-60; Ex. 2 at 108-12, 119-21, 127-28, 132-36, NS 214-15;, and
Ex. 3 at 66-68, 81-85, and 90-95 (Deps. of Nelson, Weiss and Muse).

To assert a claim for negligent misrepresentation, a plaintiff
must allege that the defendant (1) made a representation in the
course of his business, (2) supplied false information for the
guidance of others in their business, (3) did not exercise
reasonable care in obtaining or communicating the information, and
(4) thus caused the plaintiff to suffer pecuniary loss by
justifiably relying on the representation. *Fed. Land Bank Ass'n of
Tyler v. Sloane*, 825 S.W. 2d 439,442 (Tex. 1991).   The kind of
"false information" in such a claim is a statement of existing fact
rather than a promise of future conduct.   *Miller v. Raytheon
Aircraft Co.*, 229 S.W. 3d 358, 379-80 (Tex. App.--Houston [1st
Dist.] 2007, no pet.)(and cases cited therein).   Prospect asserts

-36-

that Defendants "negligently misrepresented that they would release and not sue Prospect, when they in fact intended to sue Prospect and did in fact cause Dallas Gas to sue Prospect." #82, ¶ 50.  The promise not to sue is a promise of future conduct, insist Defendants.

Conspiracy is a derivative tort that requires participation in some underlying tort such as fraud; individual Defendants contend that Prospect's conspiracy claim fails because the underlying fraud claims fail. *Newby v. Enron Corp. (In re Enron Corp. Sec., Derivatives and ERISA Litig.*, 623 F. Supp. 798, 810-11 (S.D. Tex. 2009).

Individual Defendants also insist that Prospect cannot recover under an unjust enrichment theory because it has a legal remedy against DGP for breach of contract.  Generally where there is an express contract covering the matters which the parties dispute, there can be no recovery under a quasi-contract theory.  *Fortune Prod. Co. v. Conoco, Inc.*, 52 S.W. 3d 671, 684 (Tex. 2000).  Unjust enrichment may apply where no contract was entered into or where one party has obtained a benefit through fraud, duress, or taking advantage of, none of which is the case here.  *Heldenfels Bros., Inc. v. City of Corpus Christi,* 832 S.W. 2d 39, 41 (Tex. 1992).

<em>Prospect's Response (#188)</em>

Prospect incorporates in its response those instruments in which Prospect previously addressed many of the arguments raised

again in Muse, Nelson, and Weiss's current motion for summary judgment: #176, 185, 34, and 49.

Prospect argues that the issue here is not whether limited partners can be held liable for the admitted breach by their partnership, but whether Muse, Nelson, and Weiss are directly and personally liable for breach of the contract individually signed by each.  Muse, Nelson, and Weiss have conceded that they are individually bound by the terms of the Agreement, which they signed on their own behalf as discussed in #176 at 26-28; #48 at 20, 23; #176 Ex. C at 19 and Ex. E at 134-35.  The clear and plain language of the Agreement's Section 9 Release and Covenant Not to Sue memorializes their promises not to "institute, maintain, or prosecute any action, claim, suit, proceeding or cause of action of any kind to enforce any of the MNW Released Claims."  #176 at 17 and Ex. B at 9(b).  By causing DGP to sue Prospect on the MNW Released Claims, Defendants' actions constitute the institution, maintenance, and prosecution of this action against Prospect.  They admit that they "consented to" the filing of this action and that they "caused and funded" it to pursue "MNW Claims."  #176 at 19-20 ¶ 27, and 23-24; #179 at 7; #185 at 3.  Yet they claim they are not liable because they did not put their names, but the partnership's (DGP's) name, on the pleadings in this action; in other words they argue that "institute, maintain, [and] prosecute" means "filing a lawsuit in one's own name as plaintiff."  The plain meaning of

these terms, as defined by *Black's Law Dictionary*, 9th Ed. (2009), undermines such an argument.  One definition for "institute" is "engage in; carry on."  *Id.* at 868.  "Prosecute" also means "engage in; carry on."  *Id.* at 1341.  Moreover the individual Defendants wholly controlled the partnership.  They could not do indirectly or through agents what they were prohibited from doing directly. Moreover Muse, Nelson, and Weiss also maintained the lawsuit; "maintain" contemplates and includes actions by a "third party to a lawsuit.  *Black's Law Dictionary* defines the word to mean "[t]o support (someone) financially" and "(Of a third party to a lawsuit) to assist a litigant in prosecuting or defending a lawsuit; to meddle in someone else's litigation."  *Id.* at 1039.  The three partners admit that they retained counsel to bring this lawsuit, funded it, assisted DGP in instituting and prosecuting the lawsuit throughout, and authorized every action taken to enforce the MNW Released Claims in this action, thereby violating their obligation not to "institute, maintain, or prosecute *any action* . . . to enforce any of the MNW Release Claims."  #176 at 17, Ex. B at ¶ 9(B)(emphasis added).

Prospect objects to Defendants' contention that they were allowed to replace Nelson as general partner of DGP with the assetless Dallas Gas GP LLC, of which they were managing members, and to order the filing of the prohibited lawsuit.  It observes that Defendants hope to benefit from the lawsuit, but escape

liability for the damage caused to Prospect.

With regard to Prospect's fraud claim against Muse, Nelson, and Weiss, Prospect argues that a "promise to do an act in the future is an actionable misrepresentation when made with the intent to deceive and no intention of performing the act." *Formosa Plastics*, 960 S.W. 2d at 47, *citing Spoljaric*, 708 S.W. 2d at 434; *see also* Tex. Bus. & Com. Code § 27.01(a)(2)(B)(requiring proof of an "intention of not fulfilling [a false promise to act]" when the promise is made). Although the party's intent is determined when the misrepresentation is made by him, it may be inferred by the party's subsequent acts following the representation. *Spoljaric*, 708 S.W. 2d at 434. "Intent is a fact question uniquely within the realm of the trier of fact because it so depends upon the credibility of the witness and the weight to be given their testimony." *Id.*

Defendants' sole summary judgment argument is they lacked intent not to release Prospect and not to sue Prospect because they did not read the Agreement before they signed it and did not know about the Release and Covenant Not to Sue provisions. Prospect responds that their argument fails because unless they were fraudulently induced into signing the Agreement, they are legally presumed to know the contents of the contract they executed. *DeClaire v. G&B McIntosh Family Ltd. Partnership*, 260 S.W. 3d 34, 47 (Tex. App.--Houston [1st Dist.] 2008, no pet.)("A party to a

-40-

written agreement is charged as a matter of law with the knowledge of its provisions . . . unless he can demonstrate that he was tricked into its execution."), *quoting Town North Nat. Bank v. Broaddus*, 569 S.W. 2d 489, 492 (Tex. 1978).  The Court previously rejected as a matter of law Defendants' effort to use their own deposition testimony to avoid responsibility for their promise. Amended Report & Recommendation, #52 at 5-6, adopted by District Court, #55.[20]  After Prospect counterclaimed for breach of the Release and Covenant Not to Sue, Defendants asserted that Prospect sneaked the Release in at the midnight hour so they would not notice it was included; they also stated that they deliberately chose not to read it before signing the Agreement.  The Court ruled that this evidence of willful ignorance did not raise a fact issue so as to defeat Prospect's motion for summary judgment.  *Id.  See also In re Intern. Profit Associates, Inc.*, 286 S.W. 3d 921, 923-24 (Tex. 2009)(holding that defendant's testimony that he did not see a provision in the agreement because the plaintiff-counterparty failed to direct him to the provision was insufficient as a matter of law to establish fraud, and defendant was therefore bound to the

---

[20] Magistrate Judge Froeschner pointed out that Nelson's earlier deposition testimony contradicted his subsequent claim that he was paid in his capacity as a partner of MNW Partners, and not in his individual capacity, *Albertson v. T.J. Stevenson & Co.*, 749 F.2d 223, 228 (5th Cir. 1984)(A "nonmovant cannot defeat a motion for summary judgment by submitting an affidavit which directly contradicts, without explanation, his previous testimony)(and cases cited therein); *in accord S.W.S. Erectors, Inc. v. Infax, Inc.*, 72 F.3d 489 (5th Cir. 1996).

terms of the provision).  Thus Defendants here are presumed to know the contents of the Release and Covenant Not to Sue once they signed it.  At trial Prospect needs only to prove that Defendants intended to "institute, maintain, or prosecute any action, claim, suit, proceeding or cause of action of any kind" against Prospect. Defendants have the burden to prove conclusively that either they knew nothing about the release or promise not to sue Prospect or that they intended to abide by those promises, but their only evidence submitted here is the self-serving, uncorroborated testimony of the three individuals.  *See Vais Arms, Inc. v. Vais*, 383 F.3d 287, 294 (5th Cir. 2004)(concluding that self-serving statements were insufficient to withstand summary judgment on the issue of intent).[21]  The jury will have to resolve questions of their credibility.[22]  *Beijing Metals & Minerals Imp./Exp. Corp. v. Am. Bus.,* 993 F.2d 1178, 1186 (5th Cir. 1993)("summary judgment is rarely proper" on intent "because it so depends upon the credibility of the witnesses and the weight to be given to their testimony").

_____

[21] Conclusory allegations and unsubstantiated assertions are not evidence, no less competent summary judgment evidence. *Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996).

[22] Highlighting the implausibility of Defendants' position, Prospect quotes Magistrate Judge Froeschner during a hearing:  "So we've got five super, super-duper, sophisticated people that can run any oil company in the world, and they didn't know there was a release, and the papers were being signed on their behalf?"  July 20, 2005 Hearing Transcript, #34 at 20.

Prospect further argues that the same evidence that supports its fraud claim also supports its conspiracy claim. *See* footnote 19 of this Opinion and Order discussing evidence raising a genuine issue of material fact, i.e., that Muse, Nelson, and Weiss knew that they had agreed to release Prospect, but intended to sue it anyway.

Prospect further states that it is abandoning its negligent misrepresentation claim against Muse, Nelson, and Weiss because it is encompassed by Prospect's breach of contract claim. The Court will therefore dismiss it.

Unjust enrichment occurs when "the person sought to be charged has wrongfully secured a benefit or has passively received one which it would be unconscionable to retain." *Texas Integrated Conveyor Sys., Inc. v. Innovative Conveyor Concepts, Inc.*, 300 S.W. 3d 348, 381 (Tex. App.--Dallas 2009)(*citing Heldenfels*, 832 S.W. 2d at 41). Using the cause of action as an alternative theory of recovery if its contract-based claims fail, Prospect insists that it is undisputed that the three individual Defendants stripped DGP of its only valuable asset, then filed a contract-breaching lawsuit attempting to use partnership protection as a sword. Defendants claim that Prospect has no legal means to recover the money that Defendants unjustly and unconscionably retained on false pretensions; if Defendants' arguments about Prospect's other claims are correct, equity would be Prospect's remedy to recover the

wrongfully retained benefits.   Thus its unjust enrichment claim should not be dismissed unless the Court grants Prospect's motion for summary judgment on its claims in law.

## IV.  Court's Decision

After a careful review, the Court concludes that it agrees with Prospect's analysis of the relevant law and its application here, and finds that Prospect has met its burden of proof for partial summary judgment on its counter claims for breach of Release and Covenant Not to Sue in the LLC Membership Interest Purchase Agreement against Dallas Gas GP, LLC (DGP's current general partner), David W. Nelson, Jeffrey Weiss, and Thomas P. Muse.

Prospect has submitted documentary evidence demonstrating that when Muse, Nelson and Weiss each signed the LLC Purchase Agreement containing these provisions, Nelson was DGP's General Partner and while Muse, Nelson, and Weiss were Members of MNW Partners LLC as well as limited partners of DGP.

Contrary to Defendants' assertion, Prospect does not claim that they are liable because the DGP partnership was held liable and denies that it is asserting something equivalent to alter ego or piercing the corporate veil.[23]   Section 9 of the LLC Purchase

---

[23] Indeed these theories do not apply to limited partnerships in Texas to reach limited partners.  *Pinebrook Properties Ltd. v. Brookhaven Lake Property Owners Assoc.*, 77 S.W. 3d 487, 499 (Tex. App.–Texarkana 2002).

Agreement (#176, Ex. B) memorializing this transaction required that "[e]ach of the signatories hereto (excluding the Purchaser but including without limitation, any parties acknowledging or consenting to this agreement)" . . . "not to institute, maintain or prosecute any action, claim, suit, proceeding or cause of action of any kind to enforce" any of the released Claims.  With documentary evidence, Prospect has shown, and the individual Defendants have conceded, that they signed LLC Purchase Agreement in their individual capacities and therefore are directly and personally liable as signatories to the LLC agreement, bound by the provisions promising not to "institute, maintain or prosecute" any claims against Prospect arising from the transaction.  Along with General Partner of MNW Partners, LCC David Nelson, limited partners of MNW Partners Tom Muse and Jonathan Weiss, along with the other two limited partners Brinegar and Langdon, signed the Consent and Agreement of Limited Partners of Gas Solutions Partnership II, LP, expressly approving the transaction.  Moreover it is the law of the case that Muse, Nelson and Weiss ratified the LLC Purchase Agreement by retaining the significant consideration($3.295 million) they were paid by Prospect in exchange for DGP's contract to purchase Gas Solutions, paying DGP's banking fees, agreeing to the Release and Covenant Not to Sue; that money was distributed directly to the five limited partners of DGP by Akin Gump, in proportion to their partnership interests in DGP/MNW Partners, LLC.

#170.

Moreover, because the Court has previously held that the Release and Covenant Not to Sue in ¶ 9 was clear and unambiguous, their breach of the provision is "obvious" as a matter of law and they are entitled to actual damages, including attorney's fees and litigation expenses. *Lubrizol*, 957 F.2d at 1306.  In addition, Section 11(F) of the LLC Purchase Agreement authorizes recovery of the same damages.  Moreover it is the law of the case that this suit and the one originally filed in the Eastern District of Texas were filed in breach of the Release and Covenant Not to Sue, to which the three individuals were signatories and therefore by which they were bound.  Prospect has produced uncontroverted evidence showing that Muse, Nelson, and Weiss caused and funded the filing of both lawsuits.

Furthermore DGP LLC is the general partner of Texas limited partnership DGP, which has previously been found liable for breach of the Release and Covenant Not to Sue as a matter of law.  As the general partner, DGP LLC is liable for DGP's debts and obligations based on the law of the case that DGP is liable for breach of the Release and Covenant Not to Sue.  The Texas Revised Limited Partnership Act, Tex. Rev. Civ. Stat. Ann. art. 6132a-1 § 4.03(b), provides that "a general partner of a limited partnership has the liabilities of a partner in a [traditional] partnership without limited partners to persons other than the partnership and the

-46-

other partners." Under the Texas Revised Partnership Act, in a traditional partnership "all partners are liable jointly and severally for all debts and obligations of the partnership . . . ." Tex. Rev. Civ. Stat. Ann., art. 6132b-3.04 (Vernon Supp. 2002). Thus "in a limited partnership, the general partner is always liable for the debts and obligations of the partnership." *See Pinebrook*, 77 S.W. 3d at 499.[24] *See also* Texas Business Organizations Code § 153.152(b) ("a general partner of a limited partnership has the liabilities of a partner in a partnership without limited partners to a person other than the partnership and to the other partners").

Individual Defendants' only defense to the fraud claim is that they did not read the Agreement, so they were unaware of Section 9's Release and Covenant Not to Sue and therefore could not have intended to disregard it. In what is now the law of the case, this Court and the Fifth Circuit rejected Defendants' implausible defense, unsupported by authority, but even more telling, found that they ratified the LLC Purchase Agreement by keeping the

---

[24] In a limited partnership, the general partner is always liable for the debts and obligations of the partnership. The limited partners, however, are not liable for debts and obligations of the limited partnership unless they are also a general partner or they participate in the control of the business; if they do participate in the business, they are only liable to persons who transact business with the limited partnership reasonably believing, based on the limited partners' conduct, that the limited partner is a general partner. *Id.*, art. 6132a-1, § 3.03(a); *Pinebrook*, 77 S.W. 3d at 499.

consideration.   #52 at 5-6; #55; #170 at 2 ("Dallas Gas erred in not reading the addendum that effected the release, and Dallas Gas ratified the release by keeping the sums received under the contract."). Their defense is barred by law of the case and collateral estoppel.

Furthermore, Prospect has raised genuine issues of material fact regarding its other causes of action against Defendants.  For common law fraud and statutory fraud it has cited evidence and facts raising issues about their knowledge of the Release and Covenant Not to Sue and of their intent.  Thus the conspiracy claim also survives Defendants' motion for summary judgment.

Because Prospect states it will not pursue the negligent misrepresentation claim, the Court will dismiss it.  Because the Court grants Prospect's motion for partial summary judgment on Defendants' breach of the Release and Covenant Not to Sue, it dismisses without prejudice Prospect's pleading, in the alternative, of unjust enrichment.

Accordingly, for the reasons indicated above, the Court

ORDERS that Prospect's motion for partial summary judgment is GRANTED.   Defendants' motion for summary judgment is DENIED.  Because Prospect has indicated that it no longer wishes to pursue its claim for negligent misrepresentation, that claim is DISMISSED.  Prospect's claim for unjust enrichment, pled in the alternative, is DISMISSED without prejudice.

Prospect's counsel has submitted a detailed affidavit and records in support of its request for attorney's fees and litigation costs as actual damages.  #176, Exs. 1-4.  The Court

ORDERS Defendants to file any objections to them by January 10, 2011.

This case remains set for docket call on February 4, 2011, with trial to be set in the following two weeks.

**SIGNED** at Houston, Texas, this 6th day of January , 2011.

_____
MELINDA HARMON
UNITED STATES DISTRICT JUDGE

-49-