IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| PROSPECT ENERGY CORPORATION, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION H-10-1396 |
| | § | |
| DALLAS GAS PARTNERS, LP, DALLAS | § | |
| GAS GP, LLC, DAVID NELSON, | § | |
| JEFFREY WEISS, AND TOM MUSE, | § | |
| | § | |
| Defendants. | § | |

### OPINION AND ORDER AWARDING FEES AND EXPENSES

Now that all causes of action asserted in the above referenced cause have been resolved, still pending before the Court in the above referenced action is prevailing party Plaintiff Prospect Energy Corporation's ("Prospect's") prayer for an award of attorney's fees and costs, with a supporting affidavit from lead counsel Neil Kenton Alexander and extensive billing records (#176-14 through -23, Exhibits 1-4).  The award of fees and expenses was granted as part of Prospect's entitlement to actual damages after prevailing on its claim that Defendants breached the Release and Covenant Not to Sue in the parties' LLC Purchase Agreement ("the Agreement").  *See* United States Magistrate Judge John Froeschner's Memorandum and Recommendation, #104, adopted by the then-presiding

-1-

district court judge,[1] who in turn granted the partial summary judgment in favor of Prospect (#110).  After resolving Prospect's counterclaims in favor of Prospect in its Opinion and Order of January 6, 2011, this Court ordered counsel to file an affidavit and records supporting its request for an award of fees and expenses.  #190 at 49.

**Relevant Law**

In the two-step process for a court to determine an attorney fee award, the Fifth Circuit first calculates the "lodestar," i.e., the number of hours reasonably expended on the litigation times the prevailing hourly rate for attorneys in the community of similar skill for similar work, excluding all time that is excessive, duplicative, or inadequately documented.  *Jimenz v. Wood County, Texas*, 621 F.3d 372, 379 (5th Cir. 2010), *citing* Rutherford v. Harris County, 197 F.3d 173, 192 (5th Cir. 1999), and *Watkins v. Fordice*, 7 F.3d 453, 357 (5th Cir. 1993).  The lodestar amount is strongly presumed to be reasonable.  *Saizan v. Delta Concrete Products Co., Inc.*, 448 F.3d 795, 800 (5th Cir. 2006).  Second, once calculated, the lodestar number may be reduced or enhanced by the applying the relative weights of the twelve factors in *Johnson v.*

---

[1] This case was reassigned to the undersigned judge on October 26, 2007 (#118) and ultimately transferred on April 26, 2010 (#183) from the Galveston Division, where it had been designated 3:04-cv-0669, to the Houston Division, where it was designated 4:10-cv-1396.  For a summary of the procedural and substantive background of this action, see the undersigned judge's Opinion and Order of January 6, 2011 (#190 at 7-12).

*Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974):

> (1) the time and labor required to represent the client or clients; (2) the novelty and difficulty of the issues in the case; (3) the skill required to perform the legal services properly; (4) the preclusion of other employment by the attorney; (5) the customary fee charged for those services in the relevant community; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the lawyer; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Jimenez*, 621 F.3d at 379; *Saizan*, 448 F.3d at 800.  Of the *Johnson* factors, the most important are the time and labor involved, the customary fee, the amount involved and the result obtained, and the experience, reputation and ability of counsel. *Saizan*, 448 F.3d at 800.  Because there is a strong presumption that the lodestar is sufficient, upward adjustments should be limited. *Jimenez*, 621 F.3d at 379, *citing Perdue v. Kenny A.*, 130 S. Ct. 1662, 1669 (2010).  Moreover the lodestar may not be adjusted because of a *Johnson* factor if that factor is already subsumed in the lodestar. *Saizan*, 448 F.3d at 800, *citing Migis v. Pearle Vision*, 135 F.3d 1041, 1047 (5th Cir. 1998).  Four of the *Johnson* factors are presumably included in the lodestar calculation:  the novelty and complexity of the issues, the special skill and experience of counsel, the quality of the representation, and the results obtained from the litigation. *Blum v. Stenson*, 465 U.S. 886, 898-99 (1984); *Shipes v. Trinity Indust.*, 987 F.2d 311, 310 (5th Cir.

-3-

1993).  "Although upward adjustments of the lodestar figure based on these factors are still permissible, such modifications are proper only in certain rare and exceptional cases supported by specific evidence on the record and detailed findings by the lower courts. *Id.*  Preclusion of other employment is also generally subsumed in the lodestar calculation.  *Shipes*, 987 F.2d at 321-22.

The party moving for a fee award bears the "burden of showing the reasonableness of the hours billed, including that they exercised billing judgment."  *Saizan*, 448 F.3d at 799*, citing Walker v. City of Mesquite*, 313 F.3d 246, 251 (5th Cir. 2002).  See also *Wegner v. Standard Ins. Co.*, 129 F.3d 814, 822 (5th Cir. 1997)(party seeking attorney's fees bears the burden of establishing the reasonableness of the fees by documentation and time records of the hours reasonably expended and proving the exercise of billing judgment).  The plaintiffs must also provide evidence of the attorney's qualifications and skills. *Hensley*, 461 U.S. at 437.

To demonstrate billing judgment, the party moving for a fee award must document the hours charged and the hours written off as unproductive, excessive or redundant.  *Saizan*, 448 F.3d at 799, *citing Walker,* 313 F.3d at 251, *and Green v. Adm'rs of Tulane Educ. Fund*, 284 F.3d 642, 662 (5th Cir. 2002).  If the movant fails to demonstrate billing judgment, the court should not deny fees, but should reduce the award by a percentage to substitute for the

exercise of billing judgment and eliminate hours that were not reasonably expended. *Id., citing Walker*,, 313 F.3d at 251; *Gulf Production Co., Inc. v. Hoover Oilfield Supply, Inc.*, Civ. A. No. 08-5016 *et al.*, 2011 WL 5299620, *2 (E.D. La. Nov. 3, 2011). *See, e.g., Walker v. U.S. Dept. of HUD,* 99 F.3d 761 (5th Cir. 1996)(reducing fee award by 15% for lack of billing judgment); *Leroy v. City of Houston*, 831 F.2d 576, 586 (5th Cir, 1987)(13% reduction); *Cambridge Toxicology Group, Inc. v. Exnicios*, 495 F.3d 169, 181-82 (5th Cir. 2007)(affirming 12.5% reduction); *Champion v. ADT Security Services*, No. 2:08-CV-417-TJW, 2010 WL 4736908, *6 (E.D. Tex. Nov. 16, 2010)(where plaintiffs failed to produce evidence of billing judgment, court reduced lodestar by 5%); *Coe v. Chesapeake Exploration, LLC*, Civ. A. No. 2:09-cv-290-TJW, 2011 WL 4356728, *3 (Sept. 15, 2011)(same).

A reasonable hourly rate is the prevailing market rate for similar services by similarly trained and experienced lawyers in the relevant legal community. *Riddle*, 2011 WL 1103033, at *6, *citing Tollett v. City of Kemah*, 285 F.3d 357, 368 (5th Cir. 2002). The movant bears the burden of establishing the market rate and presenting evidence the allows the court to determine the reasonableness of the proposed rate. *Id., citing Riley City of Jackson, Miss.*, 99 F.3d 757, 760 (5th Cir. 1996).[2]  An attorney

_____

[2] The fee applicant may use evidence of fees from a variety of sources, including what fee the attorney has received in the past or affidavits from other area attorneys. *Callis v. Shelette's Home*

shall, in addition to his affidavit, submit sufficient evidence that the requested rates are similar "'to those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation.'" *Id., quoting Deltatech Constr., LLC v. Sherwin-Williams Co.*, No. Civ. A. 04-2890, 2005 WL 3542906, *3 (E.D. La. Nov. 3, 2005), *quoting Blum v. Stenson*, 465 U.S. 886, 896 n.11 (1984).

"Compensable hours, reasonably spent are determined from the attorney's time records." *In re Enron Sec., Derivative & ERISA Litig.*, 586 F. Supp. 2d 732, 755 (S.D. Tex. 2008), *citing Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983).   Courts generally require the movant "to provide contemporaneous time or billing records or other documentation which the district court must examine and discern which hours are compensable and which are not." *Id., citing Louisiana Power & Light Co. v. Kellstrom*, 50 F.3d 319, 324 (5th Cir.), *cert. denied*, 516 U.S. 862 (1995).   Even if the movant fails to provide contemporaneous billing statements, a fee award is not precluded "as long as the evidence produced is adequate to determine reasonable hours.'" *Gagnon v. United Technisource, Inc.*, 607 F.3d 1036, 1044 (5th Cir. 2010), *citing Louisiana Power*, 50 F.3d at 325.

---

*for Adults, Inc.*, No. 3:10CV748-HEH, 2011 WL 4836224, *2 (E.D. Va. Oct, 12, 20011), *citing Westmoreland Coal Co. v. Cox*, 602 F.3d 276, 290 (4th Cir. 2010), and *Daly v. Hill*, 790 F.2d 1071, 1080 (4th Cir. 1986).

"'If more than one attorney is involved, the possibility of duplication of effort along with the proper utilization of time should be scrutinized.  The time of two or three lawyers in a courtroom or conference when one would do may be obviously discounted.'"  *Abrams v. Baylor College of Medicine*, 805 F.3d 528, 535 (5th Cir. 1986), *quoting Johnson*, 488 F.2d at 717.

"[P]urely clerical or secretarial tasks should not be billed at a paralegal rate, regardless of who performs them."  *Missouri v. Jenkins by Agyei*, 491 U.S. 274, 288 n.10 (1989).  For paralegal fees the court should ask if the "'work was sufficiently complex to justify the efforts of a paralegal, as opposed to an employee at the next rung lower on the pay-scale ladder.'"  *Spegon v. Catholic Bishop of Chicago*, 175 F.3d 544, 553 (7th Cir. 1999), *citing People Who Care v. Rockford Bd. of Educ., Sch. Dist. No. 205*, 90 F.3d 1307, 1315 (7th Cir. 1996).  Fees can only be recovered for paralegal services to the degree that "the paralegal performs work traditionally done by an attorney."  *Champion v. ADT*, 2010 WL 4736908, at *6, *citing Allen v. U.S. Steel Corp.*, 665 F.2d 689, 697 (5th Cir. 1982).

In accord with the "American Rule" that generally parties are to bear their own attorney's fees, Texas does not allow an award of attorney's fees unless one is authorized by statute or contract.  *Tony Gullo Motors I, LP v. Chapa*, 212 S.W. 3d 299, 310-11 (Tex. 2007); *in accord, Rosano's Farm Store, Inc. v. International*

*Collection Service, Inc.*, 115 A.D. 2d 195, 495 N.Y.S. 2d 264, 265 (1985)("Absent an express contractual obligation or specific statutory authority, counsel fees are not recoverable item of damages . . . ."). Without such authorization, the district court lacks the inherent authority to require a losing party to pay the prevailing party's fees. *Chapa*, 212 S.W. 3d at 311. Here a Texas statute cited by Prospect in its pleadings authorizes an award of fees to Prospect: a party is entitled to recover attorney's fees for success in a breach of contract claim. Tex. Civ. Prac. & Rem. Code § 38.001(8)("A person may recover reasonable attorney's fees from an individual or corporation, in addition to the amount of a valid claim and costs, if the claim is for . . . an oral or written contract."). The Agreement states that it is governed by New York law. The Court has determined that Defendants have breached the Release and Covenant Not to Sue in the Agreement. New York law clearly permits an award of fees and expenses where a party breaches such a covenant not to sue. *See, e.g., Cefali v. Buffalo Brass Co.*, 748 F. Supp. 1011, 1026-27 (W.D.N.Y. 1990); *Manti Transp., Inc. v. Associates Commercial Corp.*, No. 00-CV-6807, 2002 WL 369807, *4-5 (E.D.N.Y. Mar. 8, 2002)(authorizing award of fees for breach of a covenant not to sue). Even without express authorization in a covenant not to sue, the court may still award fees where the suit was brought in "obvious breach or otherwise in bad faith." *Cefali*, 748 F. Supp. at 1027. *See also Lubrizol Corp.*

*v. Exxon Corp.*, 957 F.2d 1302 (5th Cir. 1992)(applying New York law)(affirming district court's ruling that Lubrizol's breach of a covenant not to sue was obvious and warranted the award of reasonable litigation expenses to Exxon), *cert. denied*, 506 U.S. 864 (1992). Section 11(F) of the Agreement authorizes recovery of actual damages, including attorney's fees, in defense of the released claims, as do previous orders of the Court, i.e., now the law of the case.

A party seeking a fee award has the duty to segregate fees for claims for which fees are recoverable, from fees for claims for which they are not. *Chapa*, 212 S.W. 3d at 311, 313 ("reffirm[ing] the rule that if any attorney's fees relate solely to a claim for which such fees are unrecoverable, a claimant must segregate recoverable from unrecoverable fees"); *see also CSC Consulting, Inc. v. Thinkchain, Inc.*, 265 F. Supp. 2d 189, 190-92 (S.D.N.Y. 2003). A recognized exception is when the fees relate to claims arising out of the same transaction and are so entangled that their "'prosecution or defense entails proof or denial of essentially the same facts." *Id.* at 311, *quoting Flint & Assoc. v. Intercontinental Pipe & Steel, Inc.*, 739 S.W. 2d 622, 624-25 (Tex. App.--Dallas 1987, writ denied). Only when discrete legal services advance both a recoverable and an unrecoverable claim are they so intertwined that they need not be segregated. *Id.* at 313-14. The appropriate method for the party moving for fees is to estimate the

percentage of the legal services at issue that would have been necessary without the unrecoverable claim. *Chapa,* 212 S.W. 3d at 314.   In the wake of *Chapa*, federal courts have applied a percentage formula to reduce fees when the party seeking them failed to segregate time spent on recoverable claims from time spent on unrecoverable claims. *Chaparral Texas, LP v. W. Dale Morris, Inc.*, Civ. A. No. H-06-2468, 2009 WL 455282,*8 (S.D. Tex. Feb. 23, 2009)(and cases cited therein).   Moreover, as the court opined in *Chaparral Texas*, 2009 WL 455282 at *13,

> That the hours spent and the resulting fees are disproportionate to the amount in controversy or the amount recovered does not mean that the hours were unreasonable or the fees excessive.  But the cases show that when the fees sought are much larger than the amount at issue or recovered, a court must scrutinize whether the hours and fees are excessive in light of the complexity of the legal and factual issues and the extent of litigation necessary to obtain a favorable result on those issues.  The court should also consider whether frivolous or burdensome claims or motions by the opposing party necessitated more work by the prevailing party.

### Prospect's Request for Fees and Expenses

On behalf of the firm of Porter & Hedges, LLP, Prospect's lead attorney, Neil Kenton Alexander ("Alexander"),[3] supported by his

---

[3] Alexander represented Prospect Energy Corporation, Prospect Capital Management LLC, Prospect employees John F. Barry, John Hopley, M. Grier Eliasek, and Eric Klaussman (the "Prospect Parties") throughout this litigation.  #176-14.  His affidavit, *id.,* Exhibit N, and resume (Ex. 1 to the affidavit) establish that he has practiced civil trial law, with a focus on commercial litigation, for thirty-one years, has been a partner in Porter & Hedges for the past sixteen years and a partner in the Houston office of Baker Botts, LLP before that.

affidavit and extensive and meticulous billing records (#176-14),
seeks reimbursement of certain fees and expenses incurred and paid
by Prospect (1) in this lawsuit; (2) in the separate lawsuit
originally filed in September 2006 in the Eastern District of Texas
that asserted claims identical to those is this lawsuit, which this
Court had previously held were legally barred by the Release and
Covenant Not to Sue and which was transferred and consolidated into
this lawsuit; and (3) in response to the appeal to the Fifth
Circuit of the judgment disposing of the claims.  Alexander divides
the work into two periods:  (1) from December 2004, when Prospect
was served with the complaint, through February 2006, when the
Court granted Prospect's motion for summary judgment dismissing
Defendant Dallas Gas Partners, LP's ("DGP's") claims, requesting a
total of $810,545.00 in incurred fees and expenses; and (2) from
February 2006 until August 2009 when the Fifth Circuit affirmed
(#169) this Court's Rule 54(b) final judgment (#150) on DGP's
appeal and denied rehearing, requesting a total of $378,474.41 in
incurred fees and expenses.  In sum he claims that at least 3,073
hours of lawyer time and 686 hours of paralegal and law clerk time
were reasonably expended on defending the claims against the
Prospect parties, with fees totaling $1,189,019.41 and expenses,
$119,090.13.  *See* #176, Ex. 1 to Alexander's affidavit (Ex. N),
resumes of professionals involved; Ex. 2, summary of time recorded
daily by the lawyers and paralegals, billed to and paid by

Prospect; Ex. 3, copies of invoices for professional services and expenses, paid by Prospect; Ex. 4, hourly rates charged for the lawyers and paralegals, individually; Ex. 5, chart of the 2007 rates for area firms, used in *Newby* as evidence of reasonable rates[4]; Ex. 6, Expenses in Defense of Claims (totaling $119,090.13). The work was done by professionals with appropriate levels of experience for the tasks required and with billing rates commensurate with their skills and experience. Ex. 2. Alexander states that he has segregated fees incurred to defend against DGP's claims against Prospect from those incurred in Prospect's prosecution of counterclaims against DGP and, unless the fees were inextricably intertwined with defending Prospect from DGP's claims, the latter were not included in Table 1 (#176-14 at 6), which summarizes the work for both periods. Fees incurred on matters that did not directly involve DGP's claims were also not included in the amounts in Table 1. Alexander's affidavit states that he exercised billing judgment to make downward adjustments totaling

---

[4] *Newby v. Enron (In re Enron Corp. Sec., Deriv. & "ERISA" Litig.*, 586 F. Supp. 2d 732 (S.D. Tex. 2008). *See also Desert Rock Energy Co. LLC v. U.S. E.P.A.*, No. H-08-872, 2009 WL 3247312, *4 (S.D. Tex. Sept. 29, 2009)(finding that the party seeking fee award could rely on the billing rates chart for area firms used as evidence of reasonable rates in *Newby*). The chart demonstrates that Porter & Hedge's requested fees are within the range for and often less than those of comparable firms in the Houston area. Alexander further asserts that the rates charged in this suit are comparable to rates Porter and Hedges charges to other clients for similar work by the same professionals working on this case. See also the supporting affidavit of O. Ross Citti, #176, Ex. O.

$7,723.09 in the work related to the defense of DGP's claims against Prospect.  He further identifies and provides the resumes of the two other lawyers (Ray Torgerson, a senior associate who became a partner in the firm  in 2007; Nancy Elliott, Of Counsel) and the two paralegals (Myris Brown and Darlene Sanchez) who assisted him in this litigation.  He explains that over 80% of the professional time devoted to Prospect's defense of the claims against it was provided by the five of them and that over 99% of the partner time was provided by himself and by Torgerson after Torgerson became a partner.  Regular secretarial and other strictly administrative work is not included in the fee request.  Alexander states that he does not seek either an upward or downward adjustment based on the *Johnson* factors.  #176-14 at 16.[5]

---

[5] Regarding the *Johnson* factors, Alexander states that as shown, the hours expended in representing Prospect are reasonable; there were a number of procedurally complex issues as reflected in the history of this case; Porter & Hedges utilized professionals of appropriate levels of experience for the various tasks required, mixing partners, of counsel, associates, paralegals, and law clerks with billing rates commensurate with their skills and experience; necessarily the work reduced their availability to work on other legal matters for the firm but did not inhibit them on other work because of conflicts of interest; the fees are based on the professionals' usual fees, subject to downward adjustments; because of the amount of damages DGP sought against Prospect the case required prompt, aggressive and diligence attention by Prospect's counsel, reflected in the requested loadstar; Porter & Hedges achieved success on summary judgment dismissing DGP's claims against Prospect; the rates charged were reasonable in light of the experience, reputation and ability of the professions and appropriate for the kinds of tasks each undertook; undesirability was irrelevant in this action; Porter and Hedges did provide professional services to Prospect a few months before and since this lawsuit was filed but this action was Porter & Hedge's most

Alexander additionally describes the harassing conduct by Defendants that increased the work, fees, and expenses in this more than-five-year litigation war.  DGP filed its initial complaint against Prospect for fraud, breach of fiduciary duty, and tortious interference with existing contract on November 30, 2004.  Moreover DGB sought damages of over $100 million despite the fact that the financial statements of Prospect, a publicly held company, indicated that its net worth was substantially less than that amount.  Nine months later, after some discovery, Prospect filed a meritorious motion for summary judgment, arguing that DGP's tort claims against it were barred by the Release and Covenant Not to Sue, Section 9 of the LLC Membership Interest Purchase Agreement (#176, Ex. B), signed by all the parties.

Nevertheless the litigation continued for four more years and required a very significant amount of legal work because DGB persistently used dilatory tactics in the two meritless lawsuits involving at least twenty motions (seven of them opposed), nine fact witness depositions (two in Austin, three in New York, and four in Houston), and two appeals (one premature), producing 171 docket entries by August 2009.  After the Court granted Prospect's motion for summary judgment on February 16, 2006, DGP sought, but was denied, certification for an interlocutory appeal.

---

significant engagement by Prospect so far; and the rates charged are within the range and often lower than those of comparable firms in the Houston area.

Nevertheless DGP filed the appeal, which was ultimately dismissed by the Fifth Circuit because no final appealable judgment had been issued by the district court.   Meanwhile between February and September 2006 Alexander documents the legal work required to defend against the improper appeal.   Then in September 2006 DGP filed the new suit against a Prospect affiliate and Prospect employees in the United States District Court for the Eastern District of Texas, which was later transferred to this Court and consolidated with this case.   Alexander documents the work his firm provided between November 2006 and January 2008, caused by this second, duplicative, and meritless suit.   After the Court granted a summary judgment in favor of Prospect on the claims in the transferred suit, in August 2008 DGP sought and was granted severance of its affirmative claims and a Rule 54(a) final judgment, which DGP then appealed.   The Fifth Circuit affirmed this Court's final judgment *per curiam*.   The details of legal work on behalf of Prospect during this appeal are carefully documented.

Alexander explains that he has segregated the fees incurred in prosecuting certain counterclaims against DGP and not included them in Table 1.   To the extent that the fees relating to the counterclaim were intertwined with defending DGP's claims, those fees were necessary for that defense.

As noted, the thirty-nine pages comprising Exhibit 6 to Alexander's affidavit document the expenses incurred relating to the defense of the claims brought against Prospect by DGB.

### Defendants' Amended Objections (#196)

Defendants DGP, Dallas Gas GP, LLC, David W. Nelson, Jeffrey Weiss, and Thomas P. Muse object that Plaintiff has failed to segregate its attorney's fees incurred in defending this matter from the unrecoverable fees associated with its counterclaim, specifically the amount of unrecoverable fees that it claims it has segregated or what amount was purportedly intertwined with its defense, or what percentage of fees should be reduced to account for segregation. They charge Prospect with trying to shift the burden to segregate unrecoverable fees from recoverable fees to Defendants. They further complain that the billing records are vague, making it difficult if not impossible to discern with any certainty the fees which are not recoverable. Nevertheless, if "the Court is inclined to rule with scant information that Plaintiff has provided on segregation," Defendants recommend a 25% reduction for deficiencies in failing to perform segregation.

Defendants also charge Prospect with failing to exercise billing judgment in inadequate reduction of fees for unproductive, excessive or redundant time, e.g., for "multiple summer law clerks to review previously-filed briefs and to attend mock oral arguments" and other excessive time. They point out that Prospect

has reduced its bill by only $7,723.09, a fraction of one percent of the total fees and expenses that it seeks.  They also note that a number of entries shows that two or more attorneys attended several depositions and hearing in his case.  They observe that Prospect requests $221,396.30, not including expenses, for preparing for and attending only nine depositions.  They complain about the billing by nine people (two partners, one associate, one of counsel attorney, two paralegals and four summer clerks) for preparation for oral argument on appeal as excessive, duplicative, unreasonable and not necessary.  For this failure in billing judgment they recommend an additional 15% reduction.

Defendants also insist that Plaintiffs' expense report shows no reduction for those related to Prospect's counterclaim or for excessive costs.  They recommend the same 30% reduction for lack of segregation and of billing judgment.

Defendants support their objections with an affidavit from attorney Susan Noe Wilson ("Wilson").

## Prospect's Reply

Because the Court agrees with the responses in Prospect's reply showing that Defendants' objections are inaccurate and meritless, it does not summarize them in fine detail.  Prospect clearly explains how it has segregated its noncompensable fees incurred in prosecuting its counterclaims from those compensable fees for legal work relating to its summary judgment against

-17-

Defendants.   Alexander's affidavit and its Exhibit 2 demonstrate this segregation.   Exhibit 2 states the specific daily time and charges by lawyer and legal assistants taken from Porter & Hedges' invoices, that Prospect has paid (Ex. 3).   None of the time dedicated to the counterclaims in the daily time entries in Ex. B was included in calculations of time for which Prospect seeks to recover fees   Moreover attached to its Reply, Exhibit 1 compares Defendants' Exhibit B to the time entries in Ex. 2 to Alexander's affidavit; Exhibit 1 demonstrates that Prospect did not seek fees for any of the time on 43 of the 71 daily entries of which Defendants complain.   The remaining 28 entries in Exhibit B are for intertwined work on defense of Defendants' meritless claims and on Prospect's counterclaims, and of which Prospect seeks to recover only that portion related to defendant against Defendants' claims (not the full time listed on the invoices for which Prospect paid). Exhibit 2 identifies the amount of time for which it seeks recovery of fees for every day for every biller, and that amount is substantially less that the total time indicated on the invoices for which Prospect paid.   Moreover Prospect divides the fees into separate categories of work required to defend Prospect, including motions and pleadings, discovery, motions to compel, preparation for and taking of depositions, the premature appeal, the duplicative suit filed in the Eastern District of Texas, and the second appeal.   Alexander Affidavit, #176-14, Ex. N at ¶¶ 11-25.

-18-

As for preparation for oral argument on the second appeal, the total fees for paralegals and law clerks, including for briefing and preparation for oral argument, was 60.6 hours and fees of $8,373.28 at reasonable rates that Prospect has shown were generally lower that the average rates charged by similar firms in Houston and Dallas. The "negotiation and payment of fees by sophisticated clients are solid evidence of their reasonableness in the market." *Prospect Capital Corp. v. Emmon*, No. 08 Civ. 3721 (LBS), 2010 WL 2594633, *4 (S.D.N.Y. June 23, 2010), *citing Bleecker Charles Co. v. 350 Bleecker St. Apt. Corp.*, 212 F. Supp. 2d 226, 230 (S.D.N.Y. 2002)(collecting cases).

As noted, Prospect seeks an amount in fees and expenses that is substantially lower than what Prospect has actually paid to counsel and that was only for the specific work set out in Alexander's affidavit, yet Defendants criticize entries for which Prospect was not charged and did not pay and are not included in the instant fee request. While Defendants complain of overstaffing, Defendants' meritless claims and vexatious litigation against Prospect and its five co-defendants required more than five years of work. Only two Porter & Hedges' partners were responsible for 99% of the partner time for which Prospect was charged and for which it paid, while only three lawyers and two legal assistants covered more than 80% of the professional time required to represent Prospect. Moreover only Alexander and Torgerson attended

any of the hearings, depositions, and appellate arguments in a case where Defendants sought damages of more that $100 million.[6]

Prospect points out that in its request for fees in its motion for summary judgment it provided a detailed affidavit and extensive supporting billing records.  Yet Defendants never raised a timely issue of material fact regarding the reasonableness of the requested fees or expenses.

## Court's Decision

This litigation is something of a David and Goliath tale, with Prospect even threatened with extinction by the two meritless suits brought and prolonged by Defendants against it.  After carefully scrutinizing the record, the Court finds Prospect's fee request extremely well constructed, meticulous, and thorough, with highly persuasive support for the requested fees and expenses as reasonable and necessary in this lengthy litigation, continually obstructed, prolonged, and aggravated by Defendants' conduct. While the procedural history is complicated, the  clear and unambiguous Release and Covenant Not to Sue in the Agreement, signed by all parties, was not.  If anything, Prospect's request for fees and expenses is conservative, erring on the side of

---

[6] Prospect criticizes Wilson's accusation of overstaffing in her Declaration since she never examined any transcript or any brief filed in this matter, never attended any proceeding or made an appearance in this case, and Defendants required services of multiple lawyers at many of the hearings and depositions, including at least five partners at three firms.  #198 at 5 & nn.1&2.

restraint.   Prospect has submitted extensive evidence of billing judgment, the hours for which it seeks fees and expenses distinguished from those for which it does not.   Moreover Prospect has shown that the fees of its professionals who worked on this case were within then range of and even lower than those of comparable firms doing similar work in the Houston and Dallas area. It has used its staff judiciously, assigning tasks according to the professionals' knowledge and experience.   In contrast to Defendants, it has not increased the dispute nor engaged in excessive litigation that was not forced on it by the opposition. Accordingly, the Court

ORDERS that Prospect shall recover from Defendants, as part of its actual damages, $1,189,019.41 in attorneys' fees and $119,090.13 in expenses.   The Court further

ORDERS that Prospect shall file a proposed final judgment, including this award of fees and expenses, within twenty days of receipt of this order.   Defendants shall file any objections within ten days after the proposed judgment is filed.

**SIGNED** at Houston, Texas, this  22nd  day of  November , 2011.


_____
MELINDA HARMON
UNITED STATES DISTRICT JUDGE

-21-